**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLAUDIA C. HOERIG, | ) | CASE NO. 4:22-CV-00300-PAB |
| | ) | |
| Petitioner, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN SHELBIE SMITH, IN HER | ) | CARMEN E. HENDERSON |
| INDIVIDUAL CAPACITY (WARDEN, | ) | |
| DAYTON CORRECTIONAL | ) | REPORT & RECOMMENDATION |
| INSTITUTION); | ) | |
| | ) | |
| Respondent, | | |

## I.      Introduction

Pro se petitioner, Claudia C. Hoerig, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Hoerig is an Ohio prisoner who is currently serving a 25-year to life prison term for aggravated murder, plus a three-year term for a gun specification, followed by a term of post-release supervision. Hoerig asserts twelve grounds for relief. (*See* ECF No. 1, 4, and 14-1). Respondent, Warden Shelbie Smith, filed a return of writ on August 1, 2022. (ECF No. 30). On October 3, 2022, Hoerig filed a "draft" traverse totaling over 500 pages and requested leave to "replace [the] draft document within 15 days only for the purpose to replace the handwritten pages to make it more court-friendly, and to include 10 pages that are missing in ground 1 due to a printer error between pages 70 and 81." (ECF No. 55 at 1). On October 5, 2022, Hoerig filed a supplement to the traverse, which included an additional 20 pages, including pages "to be considered between pages 78 and 81 of the original REPLY[.]" (ECF No. 56). On October 11, 2022, Hoerig filed an additional 37-page supplement to the traverse, again asserting that it was "to be considered between pages 78 and 81 of the original REPLY[.]" (ECF No. 57). The Court deems the

1

supplements to the traverse (ECF Nos. 56 and 57) as filed and has considered them in its review of Petitioner's habeas petition.[1] Respondent replied to Petitioner's Traverse and supplements on October 18, 2022. (ECF No. 59).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Hoerig's petition and other case-dispositive motions. Because Hoerig has presented only not cognizable, procedurally defaulted, and meritless claims, I recommend that the Court deny her petition in its entirety and not grant her a certificate of appealability.

## II.    Relevant Factual Background

The basic background facts of this case are undisputed. Hoerig was charged with committing aggravated murder upon her husband Karl Hoerig ("Karl"). Hoerig testified at her trial. The Eleventh District Court of Appeals summarized Hoerig's trial testimony[2] as follows:

> {¶21} . . . [Hoerig] learned that she was pregnant for the third time on March 9 (Friday), 2007. She knew that [Karl] wanted to divorce, but she decided that she would try to save the marriage and, if that failed, she would kill herself. On that day she made arrangements to have $9,900, the balance of her personal savings, wired to her father in Brazil. She did not want [Karl] to have the money if she killed herself.
>
> {¶22} [Karl] was out of town on the weekend of March 10 to 11. [Hoerig] searched the internet for information about killing oneself with a gun.
>
> {¶23} On March 10, [Hoerig] purchased the .357 Magnum, the laser grip, and ammunition and took the gun to a firing range for practice. [Hoerig] explained that, based on what she had learned from the

---

[1] Petitioner also requested leave "to replace this documents [sic] within 15 days only for the purpose to replace the handwritten pages to make it more court-friendly." (ECF No. 57 at 2). The Court finds this unnecessary and considers ECF No. 57 as it was filed.

[2] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

internet, she was concerned about recoil and how that could affect her aim. She did not want to maim herself and survive the suicide attempt. She practiced with a laser sight to see what effect recoil was having on her accuracy. After practicing, she purchased additional ammunition at Gander Mountain.

{¶24} That weekend she built a gun mount in the closet of the upstairs bedroom because she continued to be concerned about recoil. She set the mount at the height her head would be at if she were sitting on a chair in front of the closet. She also drafted a letter pleading with [Karl] not to leave her which she sent to him as well as a few of his friends.

{¶25} [Karl] returned home on the morning of March 12, 2007. [Hoerig] confronted him with the pregnancy and they began to argue. The argument became heated and they began to struggle. Then [Karl] stopped fighting and went to take a shower. [Hoerig] started drinking and continued until she was intoxicated.

{¶26} When [Karl] finished showering (after about an hour), [Hoerig] stood before him with the .357 Magnum pointed at her head. She wanted his attention and to impress upon him that she was both serious about having the baby and desperate to save their relationship. [Karl] stared at her for about ten seconds, then grabbed her and threw her to the floor. He told her "that was a good idea" but she should wait for him to leave the house and do it in the basement so she would not splatter blood on his paintings.

{¶27} [Hoerig] testified she became very angry and described thus what happened next:

> I thought to myself, well, that's it. There's no more talking. I'm gonna kill myself. But you know what? If I'm gonna die, * * * he's gonna get his wish. This child is gonna die. The three of us are gonna die here right now. So I just — when he started going down the steps, I just got up real fast and positioned myself behind him and I shot the first time, and he died instantly. * * * And he just fell. * * * The position that he fell on the floor, he never moved from that position.

[Hoerig] believed that she "shot three times" and "hit him three times, saving two bullets for herself." She fired the second and third shots "next to him downstairs." She did not realize that she had fired

five shots. She then went upstairs to the bedroom with the suicide mount to kill herself but the gun did not fire. She reloaded it.

{¶28} At this point, [Hoerig] hesitated and decided to call her family in Brazil to say goodbye. They urged her not to kill herself but to return to Brazil instead. [Hoerig] decided to flee. She went to the bank where she kept her passport in a safe deposit box and withdrew some money from a checking account and then proceeded to the airport in Pittsburgh.

*State v. Hoerig*, 2020-Ohio-1333, ¶¶ 21-28 (Ohio App. 11 Dist., Apr. 20, 2020). In addition to

Hoerig's testimony, the State called several witnesses. The Court of Appeals summarized their

testimony as follows:

{¶4} Krista Bridges, a friend of [Karl], testified that, in August 2006, she was at a bachelorette party at which [Hoerig] was also present. While talking about [Karl], she heard [Hoerig] comment that, "if he [Karl] ever leaves me, I'd kill him."

{¶5} Donald Schrecengost testified that, in February 2007, he arranged with [Karl] to rent a house on West Broad Street in Newton Falls. Schrecengost received a deposit from [Karl] and gave him the house key.

{¶6} Daniel Henry, a friend of [Karl], testified that, in February 2007, [Karl] confided that his marriage with [Hoerig] was failing and that they were going to divorce. [Karl] showed Henry the house on Broad Street where he intended to live after they separated.

{¶7} Brian Martin testified that, on March 10 (Saturday), 2007, he was an employee of Slugmasters gun shop in Leavittsburg. On that date, he sold [Hoerig] a Smith & Wesson .357 Magnum Revolver, Crimson Trace Laser Grip (which he installed for her), and .38 and .357 hollow point ammunition. According to Martin, [Hoerig] claimed she wanted a firearm for home protection, asked several questions, and made notes of their conversation in a concealed carry handbook.

{¶8} Richard Sliter, Jr. testified that, on March 10, 2007, he was an employee of the JCL Shooting Range in Warren. On that date, [Hoerig] used the range to practice firing a .357 Magnum with laser sights.

4

{¶9} Harry Dodge, a friend of [Karl], testified that he was aware [Karl] intended to leave [Hoerig] and had invited him to stay at his home. They were members of 910th Airlift Wing based at Youngstown-Warren Air Reserve Station. On the morning of March 15 (Thursday), 2007, Dodge learned that [Karl] had failed to report at the base the previous evening. Dodge contacted the police to request a welfare check on [Karl].

{¶10} Ron Lane, formerly with the Newton Falls Police Department, testified that, on March 15, 2007, he was dispatched to a residence at 64 West Ninth Street in Newton Falls to perform a welfare check. Lane discovered [Karl's] body at the bottom of a flight of stairs.

{¶11} Pete Pizzulo, formerly a sergeant in the detective bureau of the Trumbull County Sheriff's Department, conducted an investigation of the killing. Pizzulo testified that, based on the odor and other indicators, [Karl] had been dead for a few days. His body was face-down and covered with a comforter and tarp. He had been shot three times. Two other shots had been fired, striking the floor near the body and continuing into the basement. There was a water bottle and a pair of shoes near the body.

{¶12} In an upstairs bedroom, Pizzulo found a bottle of alcohol on the bed. In the bedroom closet, a two by four had been screwed to the wall and a hole drilled in the middle of the board. The muzzle of a .357 Magnum, loaded and cocked, was inserted into the hole and aiming into the bedroom.

{¶13} Pizzulo attempted to contact [Hoerig] by phone without success. A BMW belonging to the couple was found at the Pittsburgh airport and it was learned that [Hoerig] had flown from Pittsburg to New York and thence to her native Brazil.

{¶14} Andrew Chappell, a forensic scientist in the firearms section of the Ohio Bureau of Criminal Investigation, testified that the bullet fragments and cartridges recovered from the scene were .38 caliber hollow points fired from the .357 Magnum found in the bedroom.

{¶15} Christopher Jester, a Trooper in the Ohio State Highway Patrol's Crash and Crime Scene Reconstruction Unit, testified that, based on the trajectory of the two bullets striking the floor, the shooter would likely have fired from the landing at the top of the steps or from the first and second step at the bottom of the staircase.

{¶16} Joseph Felo, a forensic pathologist and chief deputy medical examiner for Cuyahoga County Medical Examiner's Office, testified regarding the three gunshot wounds. Wound A was a nonfatal, penetrating gunshot wound caused by a bullet entering [Karl's] right upper back and travelling through the body at a steep upwards angle before shattering the right shoulder. Wound B was a fatal, penetrating gunshot wound where the bullet entered [Karl's] back closer to the neck and spine than the bullet that caused wound A. The bullet traveled downward and to the left piercing a lung and his aorta before ending behind the left nipple. Wound C was a fatal, perforating gunshot wound in which the bullet entered the right side of his head, exited the left side, and lodged in the floor underneath the head.

{¶17} Dr. Felo opined that wound A was caused first, possibly while [Karl] was bent over at the bottom of the stairs tying a shoe. Wound B was caused after [Karl] had fallen to the floor which prevented the bullet from exiting the body. Dr. Felo could not estimate the distance at which the bullets were fired causing wounds A and B. The bullet that caused wound C was fired from a distance of 12 to 24 inches based on the presence of stipple wounds. Dr. Felo noted that there were no signs of bruises or lacerations on the body such as would indicate that [Karl] had fallen down the stairs.

{¶18} Anthony Sano, an agent with the Federal Bureau of Investigation, testified that, on January 17, 2018, he escorted [Hoerig] on a flight from Brazil to the Akron-Canton Airport. During the flight, [Hoerig] admitted killing [Karl] but remarked that "a wife doesn't kill her husband without having a good reason."

{¶19} Mike Yannucci, a sergeant with the Trumbull County Sheriff's Office, interviewed [Hoerig] upon her return to Ohio on January 17, 2018. A video recording of the interview was played for the jury.

{¶20} In the video, [Hoerig] stated she met [Karl] online and they dated for about two months before marrying in June 2005. According to [Hoerig], the marriage was volatile. She suffered two miscarriages and went into depression and claimed that [Karl] was also depressed. By 2007, she had become suicidal. After a confrontation with [Karl] on the morning of March 12, 2007, she shot and killed him.

*State v. Hoerig*, 2020-Ohio-1333, ¶¶ 4-20.

## III.    Relevant State Procedural History

6

## A.     Indictment

Hoerig was indicted on April 24, 2007, for committing aggravated murder by "purposely, and with prior calculation and design, causing the death of Karl Hoerig" and that at the time she committed the aggravated murder she did "have a firearm on or about her person or under her control, and displayed the firearm, brandished the firearm, indicated that she possessed the firearm, or used it to facilitate the offense" in violation of Ohio Revised Code, Title 29, Section 2903.0l(A)&(F) and 2941.145. (ECF No. 30-1, Ex. 1, PageID #: 1205-1206). On April 24, 2007, an arrest warrant for Hoerig. (ECF No. 30-1, Ex. 2, PageID #: 1208). Hoerig was arrested on April 20, 2016, in Brazil for extradition to the United States. (*See* ECF No. 30-1, Ex. 10, PageID #: 1439). Hoerig was then arrested on January 17, 2018, in Trumbull County following her extradition from Brazil. (*See* ECF No. 30-1, Ex. 10, PageID #: 1438).

## B.     Motions to Suppress

On April 16, 2018, Hoerig filed a motion to suppress evidence seized from the Hoerig's home and vehicles. (ECF No. 30-1, Ex. 13, PageID #: 1445).  An initial hearing was on May 4 and May 5, 2018, and the court allowed the parties additional time to submit written arguments and/or proposed findings of fact and conclusions of law. (ECF No. 30-1, Ex. 13, PageID #: 1445).  The court then held an additional evidentiary hearing on August 9, 2018. (ECF No. 30-1, Ex. 13, PageID #: 1445).  On August 16, 2018, the court denied the motion to suppress. (*See* ECF No. 30-1, Ex. 20, PageID #: 1524).

## C.     Trial & Sentencing

The matter proceeded to trial on January 14, 2019, and on January 24, 2019, the jury found Hoerig guilty of aggravated murder with the firearm specification. (ECF No. 30-1, Ex. 24, PageID #: 1535).

On February 8, 2019, the court sentenced Hoerig to a term of life imprisonment without the eligibility of parole for 25 years, plus three years imprisonment on the firearm specification to be served prior to and consecutive to the underlying charge for a "total imprisonment term prior to parole eligibility of twenty-eight full years". (ECF No. 30-1, Ex. 26, PageID #: 1561). The court also ordered Hoerig to submit to DNA testing. (ECF No. 30-1, Ex. 26, PageID #: 1561).

### D.     Direct Appeal

On appeal, Hoerig raised five assignments of error:

> I. The jury's finding that appellant had committed crime of aggravated murder was not supported by sufficient evidence.
>
> II. Appellants [sic] conviction is against the manifest weight of the evidence.
>
> III. The trial court erred and abused his discretion by repeatedly permitting the state to make arguments during opening statements.
>
> IV.  The trial court erred and abused its discretion by making a series of evidentiary rulings, over the objection of Appellant's trial counsel, which caused appellant to suffer prejudice in the proceedings.
>
> V.  The cumulative effect of various errors occurring in the trial of the case at bar served to deprive Appellate of her right to a fair trial.

(ECF No. 30-1, Ex. 28).

On April 6, 2020, the Ohio Court of Appeals found meritless each of Hoerig's assignments of error and affirmed Hoerig's conviction. *State v. Hoerig*, 2020-Ohio-1333, ¶ 74. On December 17, 2020, after obtaining leave to file a delayed appeal, Hoerig filed her memorandum in support of jurisdiction with the Supreme Court of Ohio. (ECF No. 30-1, Ex. 35).  Hoerig raised the following propositions of law:

> **Proposition of Law I:** Whether the trial court erred and abused its discretion to the prejudice of the defendant in denying her Crim.R. 29(A) motion for acquittal before closing arguments because the

State failed to present sufficient evidence of premeditation and prior calculation and design to support a conviction of aggravated murder beyond a reasonable doubt, in violation of defendant's due process rights under the Fourteenth Amendment to the United States Constitution, thereby mandating a reversal.

**Proposition of Law II:** Whether the conviction of Claudia Hoerig is against the manifest weight of the evidence.

**Proposition of Law III:** Whether the trial court erred and abused his discretion by repeatedly permitting the State to make arguments during opening statements.

**Proposition of Law IV:** Whether the trial court erred and abused its discretion by making a series of evidentiary rulings, over the objection of Appellant's trial counsel, which caused Appellant to suffer prejudice in the proceedings.

**Proposition of Law V:** Whether the cumulative effect of various errors occurring in the trial of the case at bar served to deprive Appellant of her right to a fair trial.

(ECF No. 30-1, Ex. 35). On March 2, 2021, the Ohio Supreme Court declined jurisdiction. (ECF No. 30-1, Ex. 37, PageID #1760). Hoerig did not timely file a petition for certiorari in the United States Supreme Court and her filing deadline expired on May 31, 2021. *See* Sup. Ct. R. 13.

### E.  Application to Reopen

On October 28, 2020, Hoerig, pro se, filed an application to reopen her appeal asserting her appellate counsel was ineffective for failing to raise the following assignments of error:

1. Claudia Hoerig was denied her rights of due process and assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Section 10 and 16 of the Ohio Constitution because her trial counsel and her appellate counsel provided ineffective assistance.

2. The trial court erred and abused its discretion by denying Claudia's 02-16-18 and 03-20-18 motions to dismiss due to speedy trial violation pursuant to R.C. 2945, without a hearing in its journal entry dated 03-22-2018 and shifted the burden of proof to the defendant, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the

Ohio Constitution. This is also violation of due process because Claudia was not given a chance to defend against the accusations of the State.

3. The trial court erred and abused its discretion by denying Claudia's motion for a change of venue without a hearing and took nine months to rule on the motion in violation of due process. Trial court violated due process because the court release a film of her confession to police and it was repeatedly broadcasted on television and also prosecutor hired CBS news to air a story on her case twice before her trial and also for 12 years used the local newspaper which had her as their top 3 story every year. Her story saturated the community for 12 years and prejudice resulted from disruptive influences in the courtroom. It was massive, pervasive and prejudicial and it took the jury less than one hour to come up with verdict, they didn't even watch her 3- hour dvd deposition. She has a difficult to understand foreign accent which would require to watch ate least once while deliberating.

4. The prosecutor engaged in misconduct to violate the treaty between the United States and Brazil. The trial court erred and abused its discretion by not addressing the issue raise in her pro se motion and her habeas corpus that the prosecutor had produced false affidavits and employed the media for 12 years, and political help, used federal public money to bribe the Brazilian government to violate the Treaty of Extradition between the United States and Brazil, without due diligence, violation Claudia's constitutional rights from 12 years to be tried and Brazil, pear Articles V, VII, XI of the Treaty.

5. Prosecutorial misconduct resulted in an unfair trial – the prosecution failed to correct knowingly false testimony in violation of her due process rights as found in the Fourteenth Amendments to the United States Constitution. Counsel failed to challenge false testimony. Prejudice resulted. There was and Sections 10 and 16, Article 1 of the Ohio Constitution.

6. The prosecution failed to disclose exculpatory evidence to Appellee in violation of her due process rights as found in the Fourteenth Amendments (sic) to the United States Constitution and Sections 10 and 16, Article 1 of the Ohio Constitution.

7. The trial court excessive bail, journal entry violated Hoerig's due process clause of the Fourteenth Amendment, and the excessive fines clause of the Eighth Amendment to the United States Constitution and Section 9, Article 1 of the Ohio Constitution,

(ECF No. 30-1, Ex. 38, PageID #: 1771). Hoerig included 278 pages of exhibits with her application. (ECF No. 30-1, Ex. 39). The State opposed the application to reopen her appeal. (ECF No. 30-1, Ex. 40). On December 22, 2020, the court of appeals denied Hoerig's application to reopen. (ECF No. 30-1, Ex. 41, PageID #: 1899-1906). Hoerig appealed that decision to the Ohio Supreme Court (ECF No. 30-1, Ex. 42, PageID #: 1907) and asserted seven propositions of law:

1. WHETHER Claudia was denied her Sixth Amendment Right to Assistance of Counsel; and her Fourteenth Amendment Right to DUE PROCESS as guaranteed by the United States Constitution and by the Article 1 of Section 10 and 16 of the Ohio Constitution, WHEN her trial counsel and appellate counsel provided ineffective assistance.

2. WHETHER trial court erred and abused its discretion in violation of the SPEEDY TRIAL Clause and the DUE PROCESS Clause as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution Article 1 of Section 10 of the Ohio Constitution WHEN it denied Claudia's 02-16-2018 and 03-20-2018 MOTIONS TO DISMISS DUE TO SPEEDY TRIAL VIOLATION pursuant to O.R.C. 2945.71 without a hearing in its journal entry 03-22-2018 and shifted the burden of proof to the Defendant, and denying Claudia the DUE PROCESS opportunity to defend against the accusations of the State.

3. WHETHER trial court erred and abused its discretion in violation of DUE PROCESS CLAUSE and the CONFRONTATION CLAUSE as guaranteed by the Fourteenth and Sixth Amendment of the United States Constitution Article 1 Section 10 and 16 of the Ohio Constitution WHEN it denied Claudia's MOTION FOR A CHANGE OF VENUE without a hearing, WHEN it took nine months to rule on the motion; WHEN it released to the media a film of her misconstrued confession to the police which was repeatedly broadcasted on television; WHEN prosecutor hired CBS Network to air a story on her case twice before her trial; WHEN prosecutor used the local newspaper which had Claudia as their "TOP-3-STORY OF THE YEAR"; WHEN her story saturated the community for 12 years and prejudiced resulted from disruptive influences in the courtroom; WHEN publicity was invasive, persuasive and

11

prejudicial; and WHEN it took the jury only one hour to come up with a verdict, indicating that the jury didn't even watch her 3-hour-DVD deposition; WHEN Claudia has a difficult to understand foreign accent which would require the jury to watch her DVD at least once while deliberating.

4.   WHETHER the prosecutor engaged in misconduct (malfeasance) to violate the Extradition Treaty between Brazil and the United States, and WHETHER the trial court erred and abused its discretion WHEN it did not address these issues which were raised in her pretrial pro se motion and in her Habeas Corpus claiming that the prosecutor had engaged in pretrial malfeasance producing false affidavits, employing the media for 12 years, using political help, using public money to bribe the Brazilian Attorney General to violate the Treaty of Extradition, not exercising Due Diligence and violating Claudia's constitutional Rights for 12 years to be tried in Brazil per Articles V, VII and XI of the Treaty.


5.   WHETHER Claudia was denied her right to a FAIR TRIAL and DUE PROCESS as found in the Fourteenth Amendment to the United States Constitution and in Article 1 of Sections 10 and 16 of the Ohio Constitution, WHEN prosecutor engaged misconduct and failed to correct knowingly false testimony; and WHETHER Claudia was denied her right to have effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution and Article 1 of Sections 10 and 16 of the Ohio Constitution, WHEN her trial counsel failed to challenge prejudicial false testimony.


6.   WHETHER Claudia was denied her Fourteenth Amendment Right to a FAIR TRIAL and her right to DUE PROCESS; and her Sixth Amendment Right to the CONFRONTATION Clause, as found in the United States Constitution and in Article 1 Sections 10 and 16 of the Ohio Constitution, WHEN prosecutor failed to disclose EXCULPATORY EVIDENCE.


7.   WHETHER Claudia was denied her right to DUE PROCESS as found in the Fourteenth Amendment to the United States Constitution and the EXCESSIVE FINE Clause of the Eighth Amendment to the United States Constitution and Article 1 of the Section 9 of the Ohio Constitution, WHEN the trial court issued a Journal Entry setting excessive bail.

(ECF No. 30-1, Ex. 43, PageID #: 1910-11). Respondent opposed Hoerig's appeal. (ECF No. 30-1, Ex. 44, PageID #: 1938). On April 13, 2021, the Supreme Court of Ohio declined to accept jurisdiction of Hoerig's appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).

**IV.     Federal Habeas Corpus Petition**

On February 22, 2022, Hoerig petitioned through counsel that this Court issue a writ of habeas corpus. (ECF Nos. 1, 14). Hoerig asserted the following grounds for relief:

> **Ground One:** Insufficiency of Evidence.
> **Supporting Facts:** THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF THE DEFENDANT IN DENYING HER CRIM.R 29(A) MOTION FOR ACQUITTAL BEFORE CLOSING ARGUMENTS BECAUSE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE OF PREMEDITATION AND PRIOR CALCULATION AND DESIGN TO SUPPORT A CONVICTION OF AGGRAVATE MURDER BEYOND A REASONABLE DOUBT, IN VIOLATION OF DEFENDANT'S DUE PROCESS RIGHTS UNDER THE SIXTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, THEREBY MANDATING TO VACATE SENTENCE.
>
> **Ground Two:** Due Process / Manifest Weight of Evidence.
> **Supporting Facts:** THE CONVICTION OF CLAUDIA HOERIG IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, DEPRIVING CLAUDIA OF HER RIGHT TO A FAIR TRIAL AND DUE PROCESS IN VIOLATION OF HER RIGHTS TO DUE PROCESS UNDER THE SIXTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
>
> **Ground Three:** Due Process / Trial Court Abuse of Discretion.
> **Supporting Facts**: THE TRIAL COURT ERRED AND ABUSED DISCRETION BY REPEATEDLY PERMITTING THE STATE TO MAKE ARGUMENTS DURING OPENING STATEMENTS, DEPRIVING CLAUDIA OF HER RIGHT TO A FAIR TRIAL AND DUE PROCESS IN VIOLATION OF HER RIGHTS TO DUE PROCESS UNDER THE SIXTH, FIFTH AND

FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**Ground Four:** Due Process / Trial Court Abuse of Discretion/ Evidentiary Hearing.
    **Supporting Facts:** THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY MAKING A SERIES OF EVIDENTIARY RULINGS OVER THE OBJECTION OF APPELLANT'S TRIAL COUNSEL, WHICH CAUSED APPELLANT TO SUFFER PREJUDICE IN THE PROCEEDINGS, DEPRIVING CLAUDIA OF HER RIGHT TO A FAIR TRIAL AND DUE PROCESS IN VIOLATION OF HER RIGHTS TO DUE PROCESS UNDER THE SIXTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**Ground Five:** Due Process/Unfair Trial/Cumulative Effect
    **Supporting Facts:** THE CUMULATIVE EFFECT OF VARIOUS ERRORS OCCURING IN THE TRIAL OF THE CASE AT BAR SERVED TO DEPRIVE APPELLANT OF HER RIGHT TO A FAIR TRIAL AND DUE PROCESS IN VIOLATION OF HER RIGHTS TO DUE PROCESS UNDER THE SIXTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**Ground Six:** Ineffective Assistance of Counsel
    **Supporting Facts:** CLAUDIA WAS DENIED HER SIXTH AMENDMENT RIGHT TO ASSISTANCE OF COUNSEL, AND HER SIXTH, FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AS GUARANTEED BY THE UNITED STATES CONSTITUTION, WHEN HER TRIAL COUNSEL AND APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.

**Ground Seven**: Speedy Trial Violation
    **Supporting Facts:** TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN VIOLATION OF THE SPEEDY TRIAL CLAUSE AND THE DUE PROCESS CLAUSE AS GUARANTEED BY THE SIXTH, FITH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT DENIED CLAUDIA'S 02-16-2018 AND 03-20-2018 MOTIONS TO DISMISS DUE TO SPEEDY TRIAL VIOLATION PURSUANT TO O.R.C. 2945,71 WITHOUT A HEARING IN ITS JOURNAL ENTRY 03-22-2018 AND SHIFTED THE BURDEN OF PROOF TO THE DEFENDANT, AND DENIED CLAUDIA

14

THE DUE PROCESS OPPORTUNITY TO DEFEND AGAINST THE ACCUSATIONS OF THE STATE.

**Ground Eight**: Due Process/Change of Venue was Warranted

    **Supporting Facts**: TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN VIOLATION OF DUE PROCESS CLAUSE AND THE CONFRONTATION CLAUSE AS GUARANTEED BY THE FIFTH, FOURTEENTH AND SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN IT DENIED CLAUDIA'S MOTION FOR A CHANGE OF VENUE WITHOUT A HEARING; WHEN IT TOOK NINE MONTHS TO RULE ON THE MOTION; WHEN IT RELEASED TO THE MEDIA A FILM OF HER MISCONSTRUED CONFESSION TO THE POLICE WHICH WAS REPEATEDLY BROADCASTED ON TELEVISION; WHEN PROSECUTOR HIRED CBS TV-NETWORK TO AIR A STORY ON HER CASE TWICE BEFORE HER TRIAL; WHEN PROSECUTOR USED THE LOCAL NEWSPAPER WHICH HAD CLAUDIA AS THEIR "TOP-3-STORY-OF-THE YEAR"; WHEN HER STORY SATURATED THE COMMUNITY FOR 12 YEARS AND PREJUDICE RESULTED FROM DISRUPTIVE INFLUENCES IN THE COURTROOM; WHEN PUBLICITY WAS MASSIVE, PERVASIVE, AND PREJUDICIAL; AND WHEN IT TOOK THE JURY ONLY ONE HOUR TO COME UP WITH A VERDICT, INDICATING THAT THE JURY DIDN'T EVEN WATCH HER 3-HOUR DVD DEPOSITION; WHEN CLAUDIA HAS A DIFFICULT TO UNDERSTAND FOREIGN ACCENT WHICH WOULD REQUIRE THE JURY TO WATCH HER DVD AT LEAST ONCE DURING DELIBERATION.

**Ground Nine**: Due Process/Prosecutorial Misconduct & *Napue*

    **Supporting Facts**: CLAUDIA WAS DENIED HER RIGHT TO A FAIR TRIAL AND DUE PROCESS AS FOUND IN THE SIXTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN PROSECUTOR ENGAGED IN MISCONDUCT AND FAILED TO CORRECT KNOWINGLY FALSE TESTIMONY AND WHETHER CLAUDIA WAS DENIED HER RIGHT TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN HER TRIAL COUNSEL FAILED TO CHALLENGE PREJUDICIAL FALSE TESTIMONY.

**Ground Ten**: Due Process/Prosecutorial Misconduct & *Brady* Violation

15

**Supporting Facts**: CLAUDIA WAS DENIED HER SIXTH, FIFTH AND FOURTEENTH AMENDMENT RIGHTS AND BRADY RIGHTS TO A FAIR TRIAL AND HER RIGHT TO DUE PROCESS; AND HER SIXTH AMENDMENT RIGHT TO THE CONFRONTATION CLAUSE, AS FOUND IN THE UNITED STATES CONSTITUTION WHEN PROSECUTOR FAILED TO DISCLOSE EXCULPATORY EVIDENCE.

**Ground Eleven**: Due Process/Judicial Misconduct & Excessive Bail

**Supporting Facts**: CLAUDIA WAS DENIED HER RIGHT TO DUE PROCESS AS FOUND IN THE SIXTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES, AND THE EXCESSIVE FINE CLAUSE OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION, WHEN THE TRIAL COURT ISSUED A JOURNAL ENTRY SETTING AN EXCESSIVE BAIL IN THE AMOUNT OF $10,000,000.00 AND THE DOCKET SHEET SHOWED A DIFFERENT AMOUNT.

**Ground Twelve**: Violation of the Extradition Treaty

**Supporting Facts**: THE PROSECUTOR ENGAGED IN MISCONDUCT (MALFEASANCE) TO VIOLATE THE EXTRADITION TREATY BETWEEN BRAZIL AND THE UNITED STATES, AND WHETHER THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DID NOT ADDRESS THESE ISSUES WHICH WERE RAISED IN HER PRETRIAL PRO SE MOTION AND IN HER HABEAS CORPUS CLAIMING THAT THE PROSECUTOR HAD ENGAGED IN PRETRIAL MALFEASANCE PRODUCING FALSE AFFIDAVITS, EMPLOYING THE MEDIA FOR 12 YEARS, USING POLITICAL HELP, USING PUBLIC MONEY TO BRIBE THE PROSECUTION ATTORNEY GENERAL TO VIOLATE THE TREATY OF EXTRADITION, NOT EXERCISING DUE DILIGENCE, AND VIOLATING CLAUDIA'S CONSTITUTIONAL RIGHTS FOR 12 YEARS TO BE TRIED IN BRAZIL, PER ARTICLES V, VII, AND XI OF THE TREATY.

(ECF No. 14, PageID #: 39-41). In addition to her memorandum in support of her petition, Hoerig

manually filed several thousand additional pages and stated these were "Exhibits A-Z". Upon

review of the exhibits, the Court notified Hoerig that Exhibits A-G, I-K, and P-Z had been received.

Indeed, all the exhibits Hoerig identified had been accounted for (*see* ECF No. 11, PageID #: 10-

11 (identifying the included exhibits as Exhibits A-G, I-K, and P-Z)). Hoerig requested that the 5000+ pages be scanned and included on the court's electronic filing system, which the Court denied due to their voluminous nature. (*See* Order dated May 27, 2022 (The Court explained "These exhibits are part of the record and will remain part of the record despite not being scanned into CM/ECF. Should Respondent need access to the exhibits in order to respond to Petitioner's petition for habeas relief, Respondent may contact the Clerk of Court to arrange access."); and upon reconsideration on June 20, 2022 ("As the Court previously stated, these exhibits are part of the record and will remain part of the record despite not being scanned into CM/ECF. In the event that a party feels it necessary to refer to a page or exhibit from the records contained in the box of exhibits in the paper record, the party may cite to the exhibit in any manner that assists the Court in locating the proper page. […]")).[3]

Respondent filed the return of writ ("ROW") on August 1, 2022. (ECF No. 11). Hoerig then filed her Traverse and supplements. (ECF Nos. 55, 56, and 57). Respondent replied to Petitioner's Traverse and supplements on October 18, 2022. (ECF No. 59).

## V.    Legal Standards

### A.    Jurisdiction

28 U.S.C. § 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced [her]." 28 U.S.C. § 2241(d). The Court of Common Pleas of Trumbull County sentenced

---

[3] Despite the Court denying Hoerig's request to scan the 5000+ pages into CM/ECF, Hoerig began individually mailing the exhibits for filing. (*See* ECF Nos. 31-33, 35-40, 43-46, 48, 50, 52, 54, and 60 (ECF No. 60 was subsequently stricken upon motion from Respondent)).

Hoerig, and Trumbull County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Trumbull's § 2254 petition.

### B. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th 1998).

### C. Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally*

18

*Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state

courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### D. Exhaustion

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief. 28 U.S.C. § 2254(b) and (c)." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at \*12 (N.D. Ohio Feb. 12, 2007). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F.Supp.2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan*, 526 U.S. 838; *Rust v. Zent*,

17 F.3d 155, 160 (6th Cir.1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id*. (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

### E.    AEDPA Standard of Review

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of

rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## F.  Ineffective Assistance of Counsel

To establish ineffective assistance of trial counsel under the Sixth Amendment, a petitioner must show that her counsel performed deficiently and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). In such challenges, "the petitioner must demonstrate that counsel's errors were so egregious that 'counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Hale v. Shoop*, No. 1:18-CV-504, 2021 WL 1215793, *78 (N.D. Ohio Mar. 31, 2021), *reconsideration denied*, No. 1:18-CV-504, 2022 WL 605325 (N.D. Ohio Mar. 1, 2022), (quoting *Strickland*, 466 U.S. at 687). "To determine if counsel's performance was 'deficient' ..., a reviewing court must find that the representation fell below an objective standard of reasonableness." *Id*. (quoting *Strickland*, 466 U.S. at 688). And to demonstrate prejudice, a petitioner must show that there is "a 'reasonable probability that, but for

23

counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id.* (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is 'a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland*, 466 U.S. at 694).

"Ineffective assistance of appellate counsel claims are governed by the same ... standard as ineffective assistance of trial counsel" claims. *Gerth v. Warden, Allen Oakwood Correctional Inst.*, 938 F.3d 821, 831 (6th Cir. 2019) (citing *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009)). That is, "the petitioner must show that [her] appellate counsel made an objectively unreasonable decision by not raising the trial court error and that [she] suffered prejudice because of that decision." *Id.* In making that argument, a petitioner must do more "than simply identify trial court errors as [she] would on direct appeal." *Id.*

When a state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee*, 411 F. App'x 822, 828 (6th Cir. 2011). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. Also, in *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. ... An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. ... Federal

> habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington*, 131 S.Ct. 770, 786–788).

## VI.    Discussion

### A.    Ground One

In *Ground One: Insufficiency of the Evidence*, Hoerig claims that the trial court abused its discretion by denying her motion for acquittal under Rule 29(A) of the Ohio Rules of Criminal Procedure. (ECF No. 14-1, PageID #: 39). Hoerig also claims that "the State failed to present sufficient evidence of premeditation and prior calculation and design to support a conviction of aggravate[d] murder beyond a reasonable doubt". (ECF No. 14-1, PageID #: 39). Hoerig argues that the error violates her due process rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. (ECF No. 14-1, PageID #: 39). Respondent argues that Ground One fails for two reasons. First, the state law claims are not cognizable in federal habeas corpus. Second, the sufficiency of the evidence claim lacks merit.

To the extent that Hoerig challenges the trial court's denial of her motion for acquittal on the basis of state law, her claim is not cognizable on habeas review. *Umstead v. Black*, No. 20-4327, 2021 WL 2658059, at *3 (6th Cir. May 26, 2021) (citing *Estelle*, 502 U.S. at 67-68).

Hoerig's sufficiency of the evidence claim also fails. Hoerig raised this issue on direct appeal. (*See* ECF No. 30-1, Ex. 28, PageID #: 1579). The state court of appeals reviewed this claim on the merits and ruled as follows:

> {¶37} Under the first assignment of error, Claudia argues there was insufficient evidence of prior calculation and design to sustain her conviction.

{¶38} "A claim challenging the sufficiency of the evidence invokes a due-process concern and raises the question whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 165; Crim.R. 29(A) ("[t]he court * * * shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction").

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "Evaluation of the witnesses' credibility is not relevant to a sufficiency analysis." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 207.

{¶39} In order to convict Claudia of Aggravated Murder, the State was required to prove beyond a reasonable doubt that she "purposely, and with prior calculation and design, cause[d] the death" of [Karl]. R.C. 2903.01(A).

{¶40} "[T]he phrase 'prior calculation and design' is a single indivisible term, describing the mens rea element of proof necessary to find a violation of R.C. 2903.01(A)." *State v. Taylor*, 78 Ohio St.3d 15, 18, 676 N.E.2d 82 (1997).

> [R.C. 2903.01(A) employs] the phrase, "prior calculation and design," to indicate an act of studied care in planning or analyzing the means of the crime, as well as a scheme compassing the death of the victim. Neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but they must be sufficient to meet the proposed test of "prior calculation and design." In this context, momentary

deliberation is considered insufficient to constitute a
studied scheme to kill.

(Citation omitted.) *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-
8295, 82 N.E.3d 1124, ¶ 17.

{¶41} The Ohio Supreme Court has "traditionally" considered three
factors in determining whether a defendant has acted with prior
calculation and design: "(1) Did the accused and victim know each
other, and if so, was that relationship strained? (2) Did the accused
give thought or preparation to choosing the murder weapon or
murder site? and (3) Was the act drawn out or 'an almost
instantaneous eruption of events?' " *Id*. at ¶ 20, quoting *Taylor* at
19. However, "it is not possible to formulate a bright-line test that
emphatically distinguishes between the presence or absence of
'prior calculation and design.' " *Taylor* at 20. "Instead, each case
turns on the particular facts and evidence presented at trial." *Id*.

{¶42} Claudia argues that the "mere fact that [she] purchased a
firearm and then learned how to use it does not support a conclusion
that [she] intended to kill her husband." Appellant's brief at 3. We
disagree. The fact that Claudia purchased a firearm with a laser
sight, learned how to use it, and then used it to kill her husband at
the next opportunity is evidence which, if believed, would convince
the average mind, beyond a reasonable doubt, that she acted with
prior calculation and design. By her own admission, Claudia and
[Karl]'s marriage was troubled and she purchased the firearm with
the intent to kill - the issue being whom she intended to kill. Given
the circumstances, the evidence is sufficient to support the
conclusion that [Karl] rather than Claudia was the intended victim.

{¶43} Claudia also argues that her flight to Brazil might indicate
consciousness of guilt that "some crime had been committed," but
it is not evidence of prior calculation and design inasmuch as
"[n]one of the travel arrangements had already been made when the
homicide occurred and * * * one would expect to find prior travel
arrangements had been made." Appellant's brief at 4. The fact that
Claudia did not make arrangements to travel to Brazil until after
[Karl]'s murder bears on the weight of the evidence, and not its
sufficiency.

{¶44} The first assignment of error is without merit.

*State v. Hoerig*, 2020-Ohio-1333, ¶¶ 37-44.

The state court of appeals relied on state law, i.e. *State v. Jenks*, 61 Ohio St.3d 259, which follows the sufficiency of evidence standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, the issue is whether the state court decision was an unreasonable application of clearly established federal law; in other words, whether the state court identified the correct governing legal principle from Supreme Court decisions, but unreasonably applied that principle to the facts of Hoerig's case. *Williams*, 529 U.S. at 410-412; *Bolton v. Harris*, No. 1:18CV1164, 2021 WL 1930239, at *31 (N.D. Ohio Apr. 7, 2021), *report and recommendation adopted*, No. 1:18 CV 1164, 2021 WL 1929117 (N.D. Ohio May 13, 2021).

Under *Jackson*, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319; *see also Cavazos v. Smith*, 565 U.S. 1, 7 (2011); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990). The state court correctly identified and applied the governing legal principle as set forth in *Jackson*. *See State v. Hoerig*, 2020-Ohio-1333, ¶¶ 37-44.

On habeas review, "the *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain [her] conviction faces a nearly insurmountable hurdle.' " *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (*en banc*), *cert. denied*, 566 U.S. 947 (2012) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). The Supreme Court has affirmed that "*Jackson* claims face a high bar in federal habeas proceedings." *Coleman*, 566 U.S. at 651. A federal habeas court may overturn the state court's sufficiency of the evidence decision "only if the state court decision was 'objectively unreasonable.' " *Id.* (citing *Cavazos*, 565 U.S. at 4).

28

A sufficiency of the evidence claim "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting *Jackson*, 443 U.S. at 324 n.16). Thus, the federal court must look to state law to determine the elements of the crime. *See Palmer v. Palmer*, No. 1:15-CV-458, 2018 WL 7891722, at *15 (W.D. Mich. Oct. 29, 2018), *report and recommendation adopted*, No. 1:15-CV-458, 2019 WL 1429258 (W.D. Mich. Mar. 29, 2019) (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements ...."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").

To be guilty of aggravated murder under Ohio R.C. § 2903.01(A), the offender must "purposely, and with prior calculation and design, cause the death of another[.]" By definition, "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." Ohio R.C. § 2901.22(A). "All prior-calculation-and-design offenses will necessarily include purposeful homicides; not all purposeful homicides have an element of prior calculation and design." *State v. Walker*, 2016-Ohio-8295, ¶ 18, 150 Ohio St. 3d 409, 413. Three factors are to be considered when determining whether a person acted with prior calculation and design: "(1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site?

and (3) Was the act drawn out or 'an almost instantaneous eruption of events?' " *Walker*, 2016-Ohio-8295, ¶ 20, 150 Ohio St. 3d at 414.

Here, the state court's opinion, quoted above, recounts the evidence that supports a conviction for aggravated murder. *State v. Hoerig*, 2020-Ohio-1333, ¶ 42. The court of appeals highlighted that Hoerig was having trouble in her marriage and that she purchased a firearm with a laser sight, learned how to use it, and admitted to purchasing it with the intent to kill. Two days after purchasing the firearm, Hoerig shot her husband. Given the circumstances, the court found that "evidence is sufficient to support the conclusion that [Karl] rather than Claudia was the intended victim." *State v. Hoerig*, 2020-Ohio-1333, ¶ 42.

Reviewing the state court's determination on these issues, this court cannot find that the state court's decision is an objectively unreasonable application of federal law. The evidence supporting the conviction included the marriage troubles, Hoerig's pregnancy – unwanted by her husband, Hoerig's purchase of a firearm with a laser sight, her trip to the firing range to learn how to fire it, and her admission that she purchased the gun with the intent to end a life. Although Hoerig attempts to argue other explanations for these actions – such as her intent was to commit suicide and that she was afraid that recoil would only leave her disfigured – those explanations go to weight of the evidence, not sufficiency.  Hoerig fails to demonstrate that the state court determination resulted in a decision that involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States.

Consequently, Ground 1 should be denied.

## B.  Ground 2

In *Ground 2: Due Process/Manifest Weight of [the] Evidence*, Hoerig argues that the conviction was against the manifest weight of the evidence. The Warden argues that this claim is

not cognizable because a manifest weight of the evidence claim is not cognizable on federal habeas review. (ECF No. 30 at 36). The Court agrees with the Warden that manifest-weight-of-the-evidence questions do not present federal issues. *See Gulley v. Hall*, No. 5:09-CV-00441, 2010 WL 1438809, at *8 (N.D. Ohio Mar. 22, 2010), *report and recommendation adopted*, No. 5:09CV441, 2010 WL 1438807 (N.D. Ohio Apr. 9, 2010); *see also Steele v. Tambi*, Case No. 1:05-CV-00178, 2007 U.S. Dist. LEXIS 33318, at *38 (N.D. Ohio 2007). It is well-settled that claims regarding the manifest weight of the evidence are state law claims that cannot be reviewed in a federal habeas proceeding. *See, e.g., Walker*, 703 F.2d at 969 (noting that the due process clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence; it provides relief only for those convicted without sufficient proof to allow a finding of guilt beyond a reasonable doubt).[4]

Accordingly, the Court concludes that Hoerig's Ground Two claim for relief is not cognizable and should be dismissed.

### C. Ground Three

In *Ground Three: Due Process/Trial Court Abuse of Discretion*, Hoerig argues that the trial court erred by allowing the prosecution to make arguments during opening statement. (ECF No. 14-1, PageID #: 39). The Warden argues that Hoerig's claim is not cognizable, procedurally defaulted, and meritless. (ECF No. 30 at 40-43).

---

[4] Although manifest weight challenges are not cognizable in federal habeas proceedings, *Nash v. Eberlin*, No. 06–4059, 2007 WL 4438008, at *3 n. 4, 258 F. App'x 761 (unpublished) (6th Cir. Dec. 14, 2007), holds that when a federal pro se habeas litigant makes a manifest weight of the evidence claim, after presentment and adjudication in the Ohio courts, a rule of lenient construction of pro se pleadings applies to construe the manifest weight claim as a sufficiency of the evidence claim. Accordingly, this Court should construe Hoerig's second ground for relief as a challenge to the sufficiency of the evidence presented against her. For the reasons set forth in Ground One, Hoerig's sufficiency of the evidence claim fails.

Hoerig states that the trial court allowed several statements to be made by the State over the objection of her counsel. (ECF No. 14-1 at 83). Hoerig argues that the statements "mispresent[ed] the evidence", "mis[led] the jury", and "were inflammatory and argumentative." (ECF No. 14-1 at 83). First, Hoerig takes issue with the prosecutor's statement that she had admitted that she was guilty of aggravated murder. (ECF No. 14-1 at 51). Second, Hoerig takes issue with the prosecutor's reference to her "flight" and attempt to fight her extradition from Brazil. (ECF No. 14-1 at 51). Third, Hoerig argues that the trial court erred by overruling an objection to the government's discussion of the location where Karl had been shot. (ECF No. 14-1 at 53). Finally, Hoerig argues that the government improperly argued that her version of the events "made no sense". (ECF No. 14-1 at 53). Hoerig acknowledges that the trial court sustained the objection to this statement, but states that "the motion for mistrial was overruled and no curative instructions of any sort was given to the jury." (ECF No. 14-1 at 53).  In support of Ground Three, however, Hoerig cites only state law. (*See* ECF No. 14-1 at 50).

To the extent Ground Three raises a federal claim, it should be dismissed as it is procedurally defaulted. The Warden argues that Hoerig did not properly present her arguments as a federal constitutional claim on direct appeal and, thus, Ground Three is procedurally defaulted. (ECF No. 30 at 40). To "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans*, 228 F.3d at 681). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz*, 731 F.2d at 368).  Indeed,

Hoerig's habeas petition relies solely on state law. (*See* ECF No. 14-1 at 50).[5] Hoerig's argument on direct appeal also addressed only state law arguments. (*See* ECF No. 30-1, Ex. 28, PageID #: 1583 -1585). Hoerig's direct appeal did not mention federal constitutional due process or fundamental fairness, nor did it cite to or rely upon federal cases employing federal constitutional due process analysis. Accordingly, Hoerig failed to present this issue as a federal claim to the state appellate court and thereby failed to exhaust this claim. *See Wong*, 142 F.3d at 322 ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." (citations omitted)). Because under Ohio App. R. 4(A)(1) and Ohio Rev. Code. § 2953.21(A)(2)(a) Hoerig can no longer bring this argument to state court, her argument is procedurally defaulted.[6] *See Adams*, 2016 WL 6610219, at *2 ("When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted." (citing *O'Sullivan*, 526 U.S. at 848)). "A federal habeas court need not review a procedurally defaulted claim unless the petitioner can show either cause for the default and actual prejudice from the alleged constitutional violation, or that failure to consider the claim would result in a 'fundamental miscarriage of justice[.]'" *Id.* (quoting *Coleman*, 501 U.S. at 750–51). Hoerig does not argue that she meets either of these exceptions. Thus, Hoerig procedurally defaulted on any federal claims raised in Ground Three.

---

[5] Hoerig's Traverse includes citations to federal law supporting a criminal defendant's right to a fair trial. (ECF No. 55-5 at 9). However, Hoerig does not address how these general citations apply to her habeas request.

[6] Ohio App. R. 4(A)(1) gives 30 days to appeal from a final order. Ohio Rev. Code. § 2953.21(A)(2) allows 365 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment to petition for postconviction relief. Both of these dates have passed in this case.

Additionally, Hoerig's alleged errors of state law raised in Ground Three should be dismissed as they are not cognizable on habeas review. "Alleged errors of state evidentiary law are not cognizable in federal habeas review unless the state-court ruling is so fundamentally unfair that it amounts to a due process violation." *Thomas v. Berghuis*, No. 15-1164, 2015 WL 5313636, at *4 (6th Cir. Sept. 10, 2015) (citing *Moreland v. Bradshaw,* 699 F.3d 908, 923 (6th Cir. 2012)). Accordingly, to the extent Hoerig's Ground Three alleges that the state court abused its discretion in violation of state law, this ground is not cognizable on habeas review. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Moreland*, 699 F.3d at 923.

State-court rulings on issues of state law may, however, "rise to the level of due process violations [if] they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). But they must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512. Fundamental fairness under the Due Process Clause is compromised where "the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' ... and which define 'the community's sense of fair play and decency.' " *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted).

Here, Hoerig has not shown that the trial court's rulings on Hoerig's objections to the prosecutor's comments during opening statement resulted in a denial of fundamental fairness. Hoerig contends "that the jury was prejudice[d] against her and inflamed by [the prosecutor]" by the following comments during opening statement:

> Prosecutor: We have a case that happened, a crime that was committed on March 12, 2007. She fled to Brazil. In fact, the evidence will show in her long statement on videotape that's been

34

admitted for review and will be played, ***[she admitted] that she was guilty, and that she should serve a sentence in Brazil and be close to her family,

Defense counsel: Objection, Your Honor.

The Court: Again, ladies and Gentlemen of the Jury, I'm going to overrule that. These are statements of counsel. These are not evidence.

* * *

Prosecutor: You will hear this defendant say she was guilty of the aggravated murder of her husband and that she should be tried and serve time for that crime in Brazil and serve 30 years. That's what she said. You will hear it. * * *The venue of this case by law is we have to prove beyond a reasonable doubt that she killed her husband in Trumbull County, Ohio. Individuals who commit crime under the law in this county don't get a trial where they're caught. That's why the law provides extradition, which you will hear from a U.S. Marshal and an FBI agent that they brought her back as a result of legal proceedings –

Defense counsel: Objection. * * * What any of*** that has to do with this, other than highlight the fact that -- inflame the jury that she -- she has the right to fight extradition. He is not allowed to comment on that right. He's commenting and making it appear that she wanted some sort of special treatment, inflaming the jury***.

The Court: All right. Mr. Conley, I understand. You don't want any testimony regarding Brazil. I'm going to ask you to get away from Brazil and her flight and move it along.

* * *

Prosecutor: It's important in proving prior calculation and design that you consider the preparation, buying the guns [sic], where is the man located, the victim? What's the distance between the two? And how many shots were fired? And if you pursue a helpless human being and go down the steps, you've got to straddle him and go on the other side, bang, bang, bang, that's prior calculation and design.

Defense counsel: Objection.

The Court: Now you're arguing, Mr. Watkins. Back to opening statement, please.

* * *

Prosecutor: And then [Claudia] says, from her version that you will hear, that he is walking away -- walking away from the bedroom area. He was in the master bedroom, just took a shower, opened the door. She says, "I'm gonna kill myself." And he grabs the gun,

> pushes her down and lets her keep the gun. And she gets very angry. And he's walking on the stairs -- to the stairs -- to go down. We submit this did not happen.
>
> Defense counsel: Objection.
>
> Prosecutor: Your Honor, from the evidence, we submit –
>
> Defense counsel: At this point, I'm going to ask for a mistrial, Your Honor.
>
> The Court: You're starting to argue again, Mr. Watkins. Let's get back to opening statement.
>
> Defense counsel: I am going to ask for a mistrial. It's been five or six times.
>
> The Court: Your request for mistrial is denied.

(ECF No. 30-1, Ex. 31, PageID #: 1639-1640; *see also* ECF No. 30-2, Tr. Vol 3, PageID #: 2487-2513). Arguably, the prosecutor's statement that Hoerig had admitted she was guilty of aggravated murder was improper. However, just prior to this remark defense counsel had objected to the prosecutor's comment that Hoerig had admitted she was guilty, and the trial court reminded the jury that opening statements are not evidence. (ECF No. 30-2, Tr. Vol. 3, PageID #: 2487-2488). Defense counsel did not object again when the prosecutor stated "You will hear this defendant say she was guilty of the aggravated murder of her husband and that she should be tried and serve time for that crime in Brazil and serve 30 years. That's what she said. You will hear it." (ECF No. 30-2, Tr. Vol 3, PageID #: 2489). Moreover, the prosecutor had informed the jury that his statement was not evidence. (ECF No. 30-2, Tr. Vol. 3, PageID #: 2487 ("And the Court has told you, as prosecutors, as defense attorneys, we're permitted to address you as to how we believe our evidence would show what happened. As the Judge has said, the statement I'm about to give is my opinion, it's my view. It is not evidence.")). Additionally, the trial court had instructed the jury prior to opening statements as follows: "It's now the opportunity for the sides to address you in opening statements. An opening statement is a concise and orderly statement of each side's claims or defenses and the evidence they expect to produce to support those claims or defenses. Each side

36

addresses you one time in opening statements." ECF No. 30-2, Tr. Vol. 3, PageID #: 2486-2487). At the conclusion of trial, the court reminded the jury of the purpose of opening statements: "Now, the evidence does not include the indictment or any opening statements or closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They are not evidence." (ECF No. 30-2, Tr. Vol. 3, PageID #: 3249). "Because it is presumed that the jury will follow the instruction correctly as given, [ ] and absent any evidence to the contrary, there is no indication that the jury improperly considered the opening statement." *United States v. Murphy*, 241 F.3d 447, 451 (6th Cir. 2001) (internal citations omitted). Finally, Hoerig's statement was ultimately introduced during trial for the jury's consideration. (*Se*e ECF No. 30-2, Tr. Vol. 3, PageID #: 2840-2868).  Accordingly, she was not prejudiced by the prosecutor's statement. Hoerig has not demonstrated that the jury improperly considered the opening statement nor that the prosecutor's statement was so egregious that it resulted in a denial of fundamental fairness.

With respect to the remainder of Hoerig's alleged improper statements, this Court finds that although the prosecutor's remarks were argumentative at times, there was nothing about the statements that would "automatically alert the judge that an error had been made nor did the statement strike at the fundamental fairness or public reputation of the trial." *Id*. Moreover, when Hoerig objected regarding the argumentative statements, the trial court instructed the prosecutor to move along. Hoerig has not demonstrated that the prosecutor's statements were so egregious that they result in a denial of fundamental fairness.

Hoerig's state law claim should be dismissed as not cognizable.

Accordingly, Ground Three should be dismissed.

### D.  Ground Four

In *Ground Four: Due Process / Trial Court Abuse of Discretion / Evidentiary Hearing*, Hoerig argues that the trial court abused its discretion it its evidentiary rulings over her objections. (ECF No. 14-1, PageID #: 39). The Warden argues that Ground Four is not cognizable, procedurally defaulted, and meritless. As explained below, the Court agrees that Ground Four is procedurally defaulted and not cognizable.

To the extent Hoerig raises a federal claim, that claim is procedurally defaulted. Hoerig argues that when she attempted to elicit testimony from the lead officer in charge regarding a specific instance of dishonesty, the trial court improperly limited the depth of the questions, thereby preventing the jury from hearing the (alleged) fact that the officer had been fired from a position with a charity due to theft. (ECF No. 14-1 at 55). Next, Hoerig argues that the trial court abused its discretion by not allowing her to bring in testimony related to her previous attempt to commit suicide. (ECF No. 14-1 at 55-56). Hoerig also argues that the trial court abused its discretion by allowing the state to elicit testimony regarding the position of the decedent's body when Hoerig's objections to that line of questioning had been sustained on direct examination. (ECF No. 14-1 at 56). Finally, Hoerig argues that the errors separately and in combination demonstrate the trial court's "arbitrary and unreasonable handling of the evidence." (ECF No. 14-1 at 56). Each of Hoerig's identified errors challenges the trial court's evidentiary rulings pursuant to state evidentiary law. (*See* ECF No. 14-1 at 55 (citing Ohio case law)). Hoerig's argument on direct appeal also addresses only state law arguments. (*See* ECF No. 30-1, Ex. 28, PageID #: 1585 -1587). Hoerig's direct appeal did not mention federal constitutional due process or fundamental fairness, nor did it cite to or rely upon federal cases employing federal constitutional due process analysis. "[H]abeas exists only to correct errors of federal law, not state law[.]" *Moore v. Mitchell*, 708 F.3d 760, 791 (6th Cir. 2013) (citing *Estelle*, 502 U.S. at 67–68). Hoerig only ever raised this

issue as a State law error and, thus, did not properly present this claim in the state court and can no longer do so. Accordingly, Ground Four is procedurally defaulted. *Wong*, 142 F.3d at 322. Hoerig does not argue that either the cause and prejudice or the fundamental miscarriage of justice exception applies. Thus, to the extent Hoerig attempted to raise a federal claim, such a claim is procedurally defaulted.

Accordingly, Ground Four raises only errors of state evidentiary law and should be dismissed. As explained above errors of state evidentiary law are ordinarily not cognizable in federal habeas review unless the error violates the fundamental fairness of the trial thereby depriving the defendant of due process. Despite Hoerig's reference to "due process" and her "right to a fair trial" in her identification of Ground Four, Hoerig fails to demonstrate any violation of her due process or fairness in her trial.

Accordingly, Ground Four is not cognizable on habeas review.

### Ground Five

In *Ground Five: Due Process / Unfair Trial / Cumulative Effect*, Hoerig argues that the cumulative effect of the evidentiary rulings at trial deprived her of a right to a fair trial and due process under the Sixth, Fifth, and Fourteenth Amendments. (ECF No. 14-1, PageID #: 40). Hoerig states that "[a]ssuming that this court should find that none of the foregoing Ground [sic] are sufficient to warrant reversal of Claudia's conviction, then Petitioner respectfully submits that the cumulative effect of such denied Petitioner a fair trial." (ECF No. 14-1, PageID #: 92). Hoerig argues the cumulative effect of the evidentiary errors set forth in Grounds 3 and 4 is "fairly obvious" due to there being "little or no evidence [of] prior calculation and design" and the government's ability to "poison the jury" in opening statements. (ECF No. 14-1, PageID #: 92). In

support of her argument, Hoerig cites only to state law. (ECF No. 14-1, PageID #: 92). The Warden argues Ground Five is not cognizable, procedurally defaulted, and meritless.

As discussed above, Hoerig failed to demonstrate any violation of her due process or fairness in her trial resulting from the alleged state law evidentiary errors. Moreover, Hoerig's claim that the cumulative effect of the alleged evidentiary errors rendered her state-court trial fundamentally unfair is not cognizable on federal habeas petition. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011); *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010); *Burnside v. Rewerts*, No. 19-2074, 2020 WL 5592695, at *2 (6th Cir. Apr. 29, 2020).

Accordingly, Ground Five should be dismissed.

### E.  Grounds Six through Twelve

Grounds Six through Twelve merely restate the issues Hoerig raised in her motion to reopen her state appeal. She raises ineffective assistance of trial counsel in Ground Six. In Grounds Seven through Twelve, she raises alleged trial errors that were not raised in her direct appeal. For the following reasons, Grounds Six through Twelve as raised in the Petition are procedurally defaulted.

In Ground Six, Hoerig asserts ineffective assistance of trial counsel for failing to challenge the jury venire, failing to subpoena additional witnesses including "expert" witnesses, filing a

motion to suppress evidence in the Subaru, and for failing to authenticate evidence.[7] In Ground Seven, Hoerig asserts error by the trial court in denying her Motion to Dismiss on Speedy Trial grounds. In Ground Eight, she asserts error by the trial court by denying her Motion for a Change of Venue. In Ground Nine, Hoerig asserts ineffective assistance of trial counsel for failing to object to prejudicial false testimony. Hoerig asserts prosecutorial misconduct for failing to disclose exculpatory evidence (Ground Ten) and for violating the treaty between the United States and Brazil (Ground Twelve). Finally, in Ground Eleven, Hoerig asserts that the trial court erred by imposing excessive bail. The Warden argues that Grounds Six through Twelve are procedurally defaulted and, alternatively, fail on the merits. (ECF No. 30 at 68-110).

None of Hoerig's Grounds Six through Twelve were raised on direct appeal. Before seeking federal habeas relief, state prisoners must first exhaust their available state court remedies by fairly presenting all their claims to the state courts. *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir.2005). Ordinarily, the exhaustion requirement is satisfied once the petitioner has fairly presented all her claims to the highest court in the state in which he was convicted, thus giving the state a full and fair opportunity to rule on those claims before the petitioner seeks relief in federal court. *O'Sullivan*, 526 U.S. at 842. This can be done by invoking one full round of the state's established procedures. *Id*. Moreover, "[f]or the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law." *Dugas*

---

[7] Ground 6 caption includes the words "appellate counsel provided ineffective assistance", but Hoerig fails to develop this argument. Instead, Hoerig argues only the merits of the sub-issues and makes no mention of how her appellate counsel failed to provide effective assistance. (*See* ECF No. 55-7, PageID #:8176 - ECF No. 55-8, PageID #: 8251). A petitioner must present more than conclusory statements to obtain an evidentiary hearing on a claim of ineffective assistance of counsel. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (holding that a "conclusory statement" without more is "wholly insufficient to raise the issue of ineffective assistance of counsel").

*v. May*, No. 3:21 CV 2191, 2022 WL 485306, at *1 (N.D. Ohio Feb. 17, 2022) (citing *Koontz*, 731 F.2d at 369). As noted above, Hoerig failed to present these errors to the state appellate court on direct appeal. Accordingly, Hoerig failed to fairly present Grounds Six through Twelve to the state court and thereby failed to exhaust these claims. *See Wong*, 142 F.3d at 322 ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." (citations omitted)). Because under Ohio App. R. 4(A)(1) and Ohio Rev. Code. § 2953.21(A)(2)(a) Hoerig can no longer bring these arguments to state court, her arguments are procedurally defaulted.[8] *See Adams*, 2016 WL 6610219, at *2 ("When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state law, his habeas claim is procedurally defaulted.") (citing *O'Sullivan*, 526 U.S. at 848).

"A federal habeas court need not review a procedurally defaulted claim unless the petitioner can show either cause for the default and actual prejudice from the alleged constitutional violation, or that failure to consider the claim would result in a 'fundamental miscarriage of justice[.]'" *Id*. (quoting *Coleman*, 501 U.S. at 750–51). Hoerig does not argue that the "cause and prejudice" or "fundamental miscarriage of justice" exception applies to her grounds. (*See* ECF Nos. 1, 14, 55-57). Accordingly, Grounds Six through Twelve as raised in the Petition are procedurally defaulted.

Nevertheless, the Court is mindful that Hoerig introduced each of these sub-issues in her application to reopen her state appeal under Ohio App. R. 26(B) by arguing that her appellate counsel had been ineffective for failing to raise each of the sub-issues. (*See* ECF No. 7-1, Ex. 38,

---

[8] Ohio App. R. 4(A)(1) gives 30 days to appeal from a final order. Ohio Rev. Code. § 2953.21(A)(2) allows 365 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment to petition for postconviction relief. Both of these dates have passed in this case.

PageID #: 1761). There, Claudia argued that her appellate counsel had failed to raise ineffective assistance of trial counsel and a speedy trial rights violation because her counsel was biased against her or "afraid of retaliation by the local community, local authorities, and local media." (ECF No. 7-1, Ex. 38, PageID #: 1766).  Here, the Ground Six caption includes the words "appellate counsel provided ineffective assistance", but Hoerig's collection of briefs and supplements do not further address this argument. (*See* ECF Nos. 1, 14, 55-57). Further, Hoerig does not mention ineffective assistance of appellate counsel in Grounds Seven through Twelve. Nonetheless, the Court recognizes that if Hoerig had raised these claims in the Petition as claims of ineffective assistance of appellate counsel they would not be procedurally defaulted. Therefore, in an abundance of caution, this Court will determine both whether Hoerig's ineffective assistance of appellate counsel claim is viable as a stand-alone claim, and whether it can serve as the cause to excuse the procedural default for Grounds Six through Twelve. *See McClain v. Kelly*, 631 F. App'x 422, 429 (6th Cir. 2015) ("Ineffective assistance of counsel may in some circumstances constitute the 'cause' necessary to overcome a procedural default in habeas proceedings.") (citing*, Murray*, 477 U.S. at 492).[9]

A defendant has a Sixth Amendment right to "reasonably effective assistance" of counsel. *Strickland*, 466 U.S. at 687. "[I]neffective assistance of appellate counsel claims are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000)). To demonstrate ineffective assistance of appellate counsel, a

---

[9] Despite the nearly incomprehensible nature of many of Hoerig's so-called exhibits, the Court has endeavored to address each of her legal arguments and their supporting documents in the most succinct manner possible. As a result, when appropriate, the Court has reached the merits of Hoerig's arguments even if they were not properly preserved or presented to this Court.

petitioner "must show that [her] counsel's performance was deficient and that [she] was prejudiced as a result." *Id*. citing *Strickland*, 466 U.S. at 687. To show prejudice, a petitioner "must demonstrate that, but for counsel's poor performance, 'there is a reasonable probability' the result of his appeal would have been different." *Id*. (quoting *Strickland*, 466 U.S. at 694); *Moore*, 708 F.3d at 776. "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Id*. (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Furthermore, "[e]ffective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those arguments most likely to succeed." *Davila v. Davis*, 198 L. Ed. 2d 603, 137 S. Ct. 2058, 2067 (2017) (citing *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 751–753 (1983)). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Id*. citing *Smith v. Robbins*, 528 U.S. at 288. Furthermore, a petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). "The 'most important aspect to this inquiry is the strength of the case against the defendant" and whether a trial without errors would still have resulted in conviction.' " *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015) (quoting *Ambrose v. Booker*, 684 F.3d 638, 652 (6th Cir. 2012)). "The reviewing court's scrutiny of counsel's performance is highly deferential," and " 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689, 690), *overruled on other grounds by In re Abdur' Rahman*, 392 F.3d 174 (6th Cir. 2004). A petitioner's disagreements with the strategies or tactics of counsel are not

enough to support an ineffective assistance of counsel claim. *Strickland* at 689; *see McQueen*, 99 F.3d at 1311 ("[T]rial counsel's tactical decisions are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy.") (quotation marks and citations omitted).

The Court notes that Hoerig has merely restated the arguments she made in her motion to reopen her state appeal without any substantive alterations.  Accordingly, the Court will review the claims in a summary fashion due to their deficiencies.

Ground Six revolves around Hoerig's contention that Latinos were underrepresented in her jury venire. However, Ohio's method of using voter registration lists to generate jury venires is presumptively constitutional. *Jones v. Bradshaw*, 46 F.4th 459, 483 (6th Cir. 2022) (citing *State v. Moore*, 81 Ohio St.3d 22 (1998)). Hoerig offers no argument to suggest any circumstance existed to overcome this presumption. As such, she cannot demonstrate counsel was deficient for failing to challenge the jury venire.

The remainder of Hoerig's Ground Six is a rambling, often incoherent, narrative of alleged facts and errors. Hoerig appears to take issue with nearly every aspect of the performance of her trial counsel. She asserts among many other things that counsel did not engage an expert, did not cross-examine witnesses vigorously, and did not investigate her defense fully. However, Hoerig fails to meaningfully develop these arguments beyond her own self-serving conclusions that they are meritorious. For example, when challenging counsel's cross-examination decisions, Hoerig attempts to compare how many pages of transcripts were used during direct examination as opposed to cross-examination. However, she wholly fails to argue what substantive information could have been revealed through a more vigorous examination. Hoerig fails to demonstrate any potential impact on the verdict from her alleged errors, thus, she fails to demonstrate any prejudice.

Having failed to demonstrate prejudice, Hoerig cannot demonstrate that her appellate counsel was ineffective for failing to raise the underlying issue in Ground Six. Accordingly, Ground Six should be denied.

Ground Seven of Hoerig's petition is tied to her belief that her speedy trial rights were violated. Like many of her claims, Hoerig does not raise any legal argument beyond her conclusory assertion that her rights were violated. She ignores the decision of the state court that denied her motion to dismiss by simply stating that it was incorrect. However, that decision properly noted that any delay in Hoerig's prosecution was directly tied to her flight to Brazil and her own refusal to cooperate with extradition proceedings. Hoerig has not demonstrated any factual or legal error in this decision. Accordingly, Hoerig has not shown that her appellate counsel was deficient for failing to bring this error on appeal. Thus, she has failed to show ineffective assistance of appellate counsel and Ground Seven should be denied.

In Ground Eight, Hoerig contends that her rights were violated when the trial court denied her motion to change venue. However, to succeed on this claim, Hoerig must "show, at a minimum, that the trial court would have, or should have, granted a change of venue motion, and this requires a showing of actual or presumed prejudice on the part of the jury." *Dell v. Straub*, 194 F. Supp. 2d 629, 649 (E.D. Mich. 2002). Hoerig has offered no argument regarding actual prejudice of her jury. Instead, Hoerig appears to seek to rely on newspaper articles to suggest that prejudice should have been presumed due to the extent of the media coverage. However, even assuming that a presumption arose, Hoerig ignores in her petition that the trial court conducted individual voir dire and found that any media coverage had not influenced the jury. Hoerig has offered no evidence or argument that would demonstrate error in this conclusion. Because Hoerig cannot demonstrate actual prejudice resulted from the denial of her change of venue motion, she has failed to

46

demonstrate ineffective assistance of appellate counsel for not raising it. Accordingly, Ground Eight should be denied.

In Grounds Nine and Ten, Hoerig claims that her counsel should have objected to false testimony and that the prosecution violated its obligation to disclose exculpatory evidence. As with her prior claims, Hoerig has failed to demonstrate that any testimony was false and has failed to demonstrate that any material was withheld from her. Instead, she makes conclusory assertions without any legal or factual foundation. As the record is devoid of any evidence that the prosecution utilized false testimony or violated its *Brady* obligations, Hoerig has not shown any error nor prejudice resulting from such error. Accordingly, Hoerig cannot show ineffective assistance of appellate counsel for failing to raise these errors on direct appeal. Grounds Nine and Ten should be denied.

In Ground Eleven, Hoerig asserts that the trial court imposed excessive bail. However, such a claim asserted by a convicted prisoner is not cognizable under 28 U.S.C. § 2254. *See, e.g., Ether v. Dixon*, Case No. 20-60241, 2022 WL 1908918, at *13 (S.D. Fla. June 3, 2022) ("[F]ederal habeas petitioners cannot challenge, under the auspices of § 2254, the terms and conditions of their pre-trial detention."); *Ray v. Oklahoma Department of Corrections*, Case No. CIV-21-694, 2021 WL 6504241, at *7 n.4 (W.D. Okla. Dec. 17, 2021) ("A challenge to excessive pretrial bail is not cognizable in a Section 2254 habeas action."), adopted, 2022 WL 163632 (W.D. Okla. Jan. 18, 2022); *Mills v. Smith*, Civ. Action No. 18-136E, 2021 WL 2191044, at *6 (W.D. Pa. Apr. 26, 2021) ("[T]o the extent Petitioner is challenging his pre-trial bail as excessive in violation of the Eighth Amendment, this claim is moot because Petitioner has already been convicted."), *adopted*, 2021 WL 2190819 (W.D. Pa. May 31, 2021); *Dowey v. Maine*, Docket No. 2:15-cv-138, 2015 WL 6123530, at *5 (D. Maine Oct. 16, 2015) ("Claims regarding pre-conviction bail are not cognizable

under section 2254, which applies only to persons 'in custody pursuant to the judgment of a State court.' 28 U.S.C. § 2254(a). Petitioner is not in custody due to a pre-conviction bail bond; rather, she is in custody because she is serving a sentence following her conviction. Because Petitioner's current restraint is not related to the pre-conviction bail bond, she has no habeas claim regarding her pre-conviction bail." (footnotes omitted)). Accordingly, this claim is not cognizable.

Finally, in Ground Twelve, Hoerig asserts that her appellate counsel was ineffective for failing to raise as an issue that prosecutor violated Hoerig's rights by violating the terms of the treaty between the United States and Brazil in her extradition. Habeas review of Hoerig's extradition pursuant to a treaty is limited "to determining whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Kastnerova v. United States*, 365 F.3d 980, 984 (11th Cir. 2004). Hoerig does not challenge any aspect that is reviewable by this Court. Instead, she contends that the prosecutor provided false information to support extradition and that politicians interfered in the process. Not only are such arguments beyond the scope of proper habeas review, but Hoerig has failed to demonstrate that any false information influenced her extradition proceedings. Accordingly, Hoerig has not shown that she was prejudiced by her counsel not raising this issue on appeal. Since she cannot demonstrate prejudice, Hoerig cannot show that her appellate counsel was ineffective. Ground Twelve should be denied.

In conclusion, each of the sub-issues raised in Grounds Six through Twelve is either meritless, or regarding Ground Eleven, not cognizable. Hoerig cannot demonstrate that her counsel was deficient or that she was "actually prejudiced" by her appellate counsel's decision not to raise the sub-issues contained in Grounds Six through Twelve.

Furthermore, because Hoerig cannot demonstrate that her counsel was deficient or that she was "actually prejudiced" with respect to the trial errors alleged in Grounds Six through Twelve, Hoerig cannot use ineffective assistance of appellate counsel as "cause" for failing to raise these trial errors in her direct appeal.

As such, Grounds Six through Twelve are either procedurally defaulted as they were not raised on direct appeal or meritless because she fails to demonstrate her appellate counsel was ineffective in failing to raise these claims.

## VII.    Conclusion

In conclusion, Hoerig's Petition should be dismissed in its entirety because each of the grounds are either not cognizable, procedurally defaulted, or meritless.

## VIII.   Certificate of Appealability

### A.    Legal Standard

A habeas petitioner may not appeal the denial of her application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.    Analysis

49

Hoerig's grounds for relief are not cognizable, procedurally defaulted, or meritless. If the Court accepts the foregoing recommendation, then Hoerig has not made a substantial showing of a denial of a constitutional right. She would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## IX.    Recommendation

Hoerig has presented only non-cognizable, procedurally defaulted, or meritless claims. Thus, I recommend that the Court deny her petition in its entirety and not grant her a certificate of appealability.

DATED: February 15, 2023

*Carmen E. Henderson*
Carmen E. Henderson
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).